PIPHUS et al., Appellees,

v.

BLUM et al., Appellants.

[Cite as *Piphus v. Blum* (1995), 108 Ohio App.3d 218.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940265.

Decided Dec. 29, 1995.

*Lawson & McLean, Kenneth Lawson* and *Timothy A. Smith,* for appellees.

*Manley, Burke, Fischer & Lipton, Timothy M. Burke* and *Andrew S. Lipton,* for appellants.

GORMAN, Presiding Judge.

Defendants-appellants, the police chief of the village of Lockland, Donald Blum, and two of his patrol officers, Mark Reiber and Scott Witsken, appeal the trial court's order denying them summary judgment on qualified-immunity grounds in this civil rights action brought by plaintiffs-appellees under Section 1983, Title 42, U.S.Code.,[1] and under state tort claims. In a single assignment of error, appellants claim that by applying an incorrect test to determine whether the affirmative defense of qualified immunity was available, the trial court erred in denying them summary judgment.[2] Because the affirmative defense of qualified immunity is a bar only to actions for damages, and because appellees' surviving Section 1983 claims against appellants seek only declaratory and injunctive relief, we overrule the assignment of error and affirm the judgment of

---

1. The Ohio Supreme Court has expressly held that Ohio courts have jurisdiction over Section 1983 actions. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292–293, 595 N.E.2d 862, 869–870; see *Howlett v. Rose* (1990), 496 U.S. 356, 358, 110 S.Ct. 2430, 2433, 110 L.Ed.2d 332 (acknowledging the concurrent jurisdiction of state courts over Section 1983 actions).

2. Appellees moved to dismiss this appeal for lack of a final, appealable order. We denied the motion and now exercise jurisdiction to decide the appeal on its merits.

the trial court, albeit on grounds completely different from those advanced by the trial court.

## THE FACTS

In February 1993, the Hamilton County Sheriff's Office invited the village of Lockland to participate in a program known as Operation Intercept, conducted by the Ohio Highway Patrol. Two Lockland police officers, appellant Reiber and defendant Brian Blum, attended a three-day training program. The main focus of Operation Intercept was to train officers to take the opportunity to investigate for drugs during routine traffic stops. Appellants applied the techniques they were taught in their routine patrols on the streets of Lockland.

In March, April, and May 1993, the appellees were each stopped by the various defendants and defendants-appellants for minor traffic violations. Once they were lawfully stopped, appellees allege, the appellants violated their constitutional rights by arresting them for failure to possess a driver's license and then conducting a warrantless search of their persons and vehicles pursuant to the arrest. Only after completing the search did the appellants run a computer check from the mobile data terminal in their patrol cars to determine if the appellees were, in fact, licensed drivers.

The appellees are all African–American citizens. They alleged that it is the policy and custom of the Lockland police force to stop African–Americans routinely for minor traffic violations as a pretext to conduct in-depth searches of their persons and vehicles for drugs. On July 12, 1993, appellees brought this complaint. Pursuant to Section 1983, appellees alleged that the appellant police officers, government officials acting under color of law, deprived the appellees of federally protected constitutional rights. See *Gomez v. Toledo* (1980), 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572; *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456, 458. Appellees also raised state tort claims of intentional infliction of emotional distress against the appellants. Appellants' employer, the village of Lockland, was not named as a defendant in this action.

## THE QUALIFIED–IMMUNITY TEST

Appellants assert on appeal that the trial court applied the wrong standard in determining that they were not entitled to qualified immunity. We agree.

The trial court denied appellants qualified immunity because it found a genuine issue of material fact remained as "to whether officers of reasonable competence could disagree" that the arrests of appellees were lawful. Appellees were

arrested for failure to have a driver's license in their physical possession while operating a motor vehicle in violation of R.C. 4507.35. A violation of this statute is a misdemeanor of the first degree. Appellants claim this permits police officers to arrest a violator and conduct a full-blown search incident to arrest.

■ The rationale for granting qualified immunity to government officials in Section 1983 cases is stated in *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396: while performing discretionary functions, police officers are entitled to qualified immunity if their conduct conforms to what a reasonable officer would believe was lawful in light of "clearly established law" and "information possessed" at the time of the challenged conduct. The test is one of "objective reasonableness" that requires "a reasonably competent public official [to] know the law governing his conduct." *Id.* at 818–819, 102 S.Ct. at 2738, 73 L.Ed.2d at 410–11; *Bills v. Aseltine* (C.A.6, 1995), 52 F.3d 596, 601; *Cook v. Cincinnati* (May 31, 1995), 103 Ohio App.3d 80, 658 N.E.2d 814.

Appellants argue, on appeal, that at the time the appellees were arrested and searched, it was not clearly established that appellees had a constitutionally protected right to be free from arrest for a violation of R.C. 4507.35. In the absence of that clearly established right, the appellants are entitled to qualified immunity. Moreover, in light of the three-day Operation Intercept training session sponsored by the Hamilton County Sheriff's Office and conducted by troopers of the Ohio Highway Patrol, in which the participants were taught of the legality [3] of the arrest and search procedures at issue, the appellants had ample reason to believe their actions were lawful. We note that appellees have not made the Hamilton County Sheriff's Office or the Ohio Highway Patrol parties to this civil rights action.

## THE ALLEGATIONS IN THE COMPLAINT

The narrow issue presented for our review in appellants' assignment of error is the trial court's denial of summary judgment on the issue of qualified immunity. In answering the assignment of error, we have reviewed the entry denying summary judgment under the same standard employed by the trial court. Civ.R. 56; *Welco Indus. Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129. Pursuant to Civ.R. 56(C) and 56(E), we have conducted a thorough review of all

---

3. We acknowledge that generally police officers ought not to have to carry decennial digests in their patrol cars so as to determine the lawfulness of their actions. Nonetheless, we are compelled to state directly that merely because a practice of arrest and search is taught by otherwise competent law enforcement authorities does not make it constitutional. Only analysis and evaluation by the proper legal authority can establish belief that the practice will pass constitutional muster.

appropriate materials filed by the parties. See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

The specific allegations and causes of action stated in the complaint are critical to the resolution of this appeal. We will provide a detailed description of the counts that appellees raised.

Appellees, seeking only declaratory and injunctive relief, asserted in count one of their complaint that the "pretextual and illegal stop, search and arrest policy of the Lockland Police Department and its enforcement by [appellants] acting only in their official capacity" is "unconstitutional on its face" because it deprived them of their right to be free from illegal searches and seizures and of their right to the equal protection of the laws guaranteed by the Fourth and Fourteenth Amendments to the federal Constitution.

In count two, appellees, again seeking "injunctive relief only against all [appellants] sued in their official capacities," alleged that appellants' arrest and search policy, "as applied, violates the [appellees'] right to equal protection" because it is disproportionately applied to African–American citizens.

Appellees, seeking both injunctive relief and damages against the appellants in count three, claimed that appellants' unconstitutional actions had inflicted emotional distress on the appellees by subjecting them to cruel and unusual punishment.

In count four, appellees alleged the appellants intentionally caused them serious emotional distress. Appellees sought damages against the appellants in their individual capacities. In their fifth count, appellees sought punitive damages in an amount not less than compensatory damages, and claimed the appellants' conduct was intentional and outrageous.

In counts one, two, and three, appellees urged the court to declare the arrest and search policy unconstitutional and to enjoin permanently the enforcement of the policy. In counts three, four, and five, appellees sought monetary damages.

## THE TRIAL COURT'S DECISION ON SUMMARY JUDGMENT

Following extensive discovery, the appellants moved for summary judgment on various grounds. On March 22, 1994, in a detailed, twenty-four-page entry and decision, the trial court granted summary judgment in part and denied it in part.

Specifically, employing its flawed test for qualified immunity, the court denied summary judgment for all appellants on the claims of illegal arrest and search raised in count one. This denial is the main focus of appellants' appeal. The court also denied summary judgment on the claims for intentional infliction of emotional distress raised in count four.

In resolving the equal protection claim, raised in count two, the trial court determined that no genuine issue of material fact remained as to evidence of the discriminatory intent of appellants Blum and Witsken. The court, therefore, granted summary judgment to appellants Blum and Witsken. Finding some material facts at issue as to his intent, the court denied summary judgment to appellant Reiber. The qualified immunity defense was not employed in the resolution of this claim.

On grounds unrelated to qualified immunity, the court granted summary judgment for all the appellants, on count three, the claim for cruel and unusual punishment.

The trial court thus granted summary judgment on the only claims that sought monetary damages for deprivation of a constitutional right—count three. The only Section 1983 claims to survive summary judgment are count one (illegal arrest and search) as to all appellants and count two (equal protection) as to appellant Reiber. Both these remaining counts seek only declaratory and injunctive relief against appellants in their official capacity.

We note that appellees have not filed a cross-appeal, nor have they assigned as error the trial court's resolution of any portion of the motion for summary judgment.

## THE AVAILABILITY OF QUALIFIED IMMUNITY

The issue for our resolution is: In a Section 1983 claim seeking only equitable relief, are the appellants entitled to the affirmative defense of qualified immunity? A simple and well-established principle disposes of this appeal: Qualified immunity is not a proper defense to a claim for injunctive relief. *Wood v. Strickland* (1975), 420 U.S. 308, 314, 95 S.Ct. 992, 997, 43 L.Ed.2d 214, fn. 6. A Section 1983 plaintiff's claims for injunctive relief are not barred by qualified immunity. *Wayne v. Sebring* (C.A.6, 1994), 36 F.3d 517, 530. "Qualified immunity applies to monetary damages relief, but not to declaratory and injunctive relief." *Fortner v. Thomas* (C.A.11, 1993), 983 F.2d 1024, 1029.

The essential rationale for granting qualified immunity is that officials should not be punished for the vigorous performance of their duties by being held liable for actions that a reasonable person would not have known violated the rights of another. *Harrill v. Blount Cty.* (C.A.6, 1995), 55 F.3d 1123, 1124; see *Malley v. Briggs* (1986), 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Immunity from personal monetary liability encourages government officials to act without hesitation when confronting a difficult problem that calls for a quick and decisive response. In the absence of such immunity, most persons would be reluctant to participate in public service. See, generally, *Wood v. Strickland,* 420 U.S. at 314, 95 S.Ct. at 997, 43 L.Ed.2d at

220–21, and *Scheuer v. Rhodes* (1974), 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90. Where an action seeks equitable and not monetary relief, and is brought against officers in their official capacities, however, these concerns are not implicated.

The doctrine of qualified immunity also reflects a concern about subjecting public officials to the burdens, costs, risks, and distractions of litigation itself. See *Mitchell v. Forsyth* (1985), 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411. Any suit against a public official would seem to implicate this concern, but an action seeking only injunctive relief effectively puts the government on trial, not the individual defendant. The United States Court of Appeals for the Sixth Circuit declared: "The exposure to personal liability in damages and the potential need for retention of private counsel to protect against that risk is quite different from the problem faced by an official who is charged only in an official capacity." *Kennedy v. Cleveland* (C.A.6, 1986), 797 F.2d 297, 306. That court has repeatedly held that an official-capacity claim is a claim against the governmental entity. *Leach v. Shelby Cty. Sheriff* (C.A.6, 1989), 891 F.2d 1241, 1245. In such suits, the government generally provides the legal representation and conducts the defense. The concern about the burdens and risks of litigation is therefore much diminished in actions involving only equitable relief and insufficient to justify permitting qualified immunity to serve as a defense in such actions.

Therefore, the single assignment of error advanced is overruled. The trial court's denial of the appellants' motion for summary judgment based on the defense of qualified immunity is affirmed.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN and SUNDERMANN, JJ., concur.