OPINION
Plaintiff-appellant, David Scott, appeals the June 19, 2000 judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, City of Columbus and two of its police officers, Sean Wolcoff and Ralph Jarrell. For the reasons that follow, we affirm.
On May 28, 1998, appellant filed suit against the appellees, raising state law claims for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress (collectively, the state law claims), and a federal claim under Section 1983, Title 42, U.S. Code ("Section 1983 claim"). The Section 1983 claim alleged a deprivation of appellant's rights to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution. Appellees Wolcoff and Jarrell were sued in their official and individual capacities.
All claims in appellant's complaint arose out of a May 29, 1997 incident in which Officers Wolcoff and Jarrell temporarily seized appellant as he was walking near The Ohio State University campus. The officers had mistakenly concluded that appellant might be a suspect in a recently reported threat to the owner of a nearby pizza shop.
The record contains the following facts: On May 29, 1997, at approximately 4:15 p.m., the owner of the Flying Pizza shop, located in the middle of the block between Fourteenth and Fifteenth Avenues on High Street across from the Ohio State campus, telephoned 911 to report that a man in front of the shop had threatened to shoot the owner. The owner described the assailant as a black man, 6' 2" tall, 195 pounds, wearing a brown leather jacket and carrying a bag. By 4:20 p.m., Officers Wolcoff and Jarrell were dispatched to the location in separate police cruisers.
At approximately the same time, appellant was walking south on High Street past the Flying Pizza shop and heading toward his parked car. At the corner of High Street and Fourteenth Avenue, appellant saw a panhandler and, in order to avoid contact with the panhandler, appellant picked up his pace and proceeded southeast through the parking lot at Fourteenth Avenue. Fourteenth Avenue dead ends just before it reaches High Street and is separated from High Street by curbs and a sidewalk. Officers Wolcoff and Jarrell approached the scene in their respective cruisers from the south on High Street, with Officer Wolcoff in the lead. Seeing appellant, Officer Wolcoff motioned to Officer Jarrell indicating that appellant might be the assailant, and the two officers drove over the Fourteenth Avenue curb toward appellant.
Appellant heard two low level "crunch" sounds behind him. He looked back and noticed two police cruisers driving up and over the sidewalk at High Street and Fourteenth Avenue. One cruiser pulled in front of appellant, and the other stopped behind appellant. At that point, Officers Jarrell and Wolcoff got out of their cruisers and, according to appellant, pointed their guns at appellant, and began yelling orders at him. Appellant stopped and tried to understand what the officers wanted him to do. Eventually, appellant was grabbed by the officers, put against one of the cruisers, and was handcuffed behind his back. The officers patted appellant down, and eventually searched his pockets and his briefcase, finding no weapon or other contraband. Appellant was placed in one of the cruisers and was later released when the pizza shop owner confirmed that appellant was not the assailant. The incident lasted a total of approximately five minutes.
At the time of the incident, appellant was carrying a large-sized scarlet and gray Ohio State umbrella and had a brown briefcase bag hanging from a strap over his shoulder. He was wearing a black ball cap with orange lettering, and a yellow and white checkered shirt. He further contends that he was not wearing a coat or jacket. Appellant stated that he weighed approximately 163 pounds and was approximately 5' 8" tall.
In a written decision filed April 16, 2000, the trial court granted summary judgment in favor of appellees on all of appellant's claims. Specifically, the trial court granted summary judgment as to appellant's Section 1983 claim against the city of Columbus and Officers Wolcoff and Jarrell in their official capacities because appellant failed to present evidence that a city policy or custom resulted in the alleged constitutional violation. The trial court granted summary judgment as to appellant's Section 1983 claim against Officers Wolcoff and Jarrell in their individual capacities because both were entitled to qualified immunity as a matter of law. Finally, the trial court granted summary judgment as to appellant's state law claims, finding that appellees were entitled to statutory immunity under R.C. 2744.03.
A judgment entry incorporating the trial court's summary judgment decision was filed on June 19, 2000. It is from this judgment entry that appellant timely appeals, raising the following two assignments of error:
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES AS TO THE FOURTH CLAIM IN THE COMPLAINT WHICH ALLEGED A VIOLATION OF THE FOURTH AMENDMENT AND 42 U.S.C. SECTION 1983.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES AS TO THE FIRST AND SECOND CLAIMS IN THE COMPLAINT WHICH ALLEGED STATE LAW TORTS.
In his first assignment of error, appellant contends that the trial court erred in granting summary judgment on appellant's Section 1983 claim against Officers Jarrell and Wolcoff in their individual capacities.[1] In particular, appellant contends that Officers Jarrell and Wolcoff were not entitled to the defense of qualified immunity as a matter of law. According to appellant, there are genuine issues of material fact indicating that the officers' seizure of appellant was objectively unreasonable under the Fourth Amendment to the United States Constitution. We disagree.
Under the doctrine of qualified immunity, public officials, including police officers, who perform discretionary functions are generally entitled to immunity from suit in a Section 1983 action so long as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 85, citing Harlow v. Fitzgerald (1982), 457 U.S. 800, 818; Gardenhire v. Schubert (C.A.6, 2000), 205 F.3d 303, 310-311. "The doctrine [of qualified immunity] recognizes that these officials must routinely make close decisions in the exercise of their authority and that the law that guides their conduct is often ambiguous and difficult to apply." Murphy v. Reynoldsburg (Aug. 8, 1991), Franklin App. No. 90AP-1296, unreported, reversed on other grounds (1992), 65 Ohio St.3d 356 . "The essential rationale for granting qualified immunity is that officials should not be punished for the vigorous performance of their duties by being held liable for actions that a reasonable person would not have known violated the rights of another." Piphus v. Blum (1995), 108 Ohio App.3d 218, 224. Qualified immunity, therefore, encourages government officials to act without hesitation when confronted with a problem that requires a quick and decisive response and ameliorates the concern that most persons would be reluctant to participate in public service in the absence of such immunity. Id.
The standard for qualified immunity is one of objective reasonableness. As such, claims of qualified immunity are to be analyzed on a fact specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information that he possessed. Pray v. Sandusky (C.A.6, 1995), 49 F.3d 1154, 1158; see, generally, Hicks v. Leffler (1997), 119 Ohio App.3d 424, 427-428. The contours of the right alleged to have been violated must be sufficiently clear such that a reasonable official would understand that, what he is doing, violates that right. Anderson v. Creighton (1987), 483 U.S. 635,640. "[If] officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs (1986),475 U.S. 335, 341; see, also, Bruce v. Village of Ontario (Nov. 24, 1998), Richland App. No. 98-CA-9-2, unreported ("[a] violation of clearly established law must be so clear as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional").
Thus, even if the official's conduct is ultimately proved legally wrong, he still will be entitled to immunity as long as his decision was objectively reasonable. Pray, supra, at 1158; see, e.g., O'Brien v. City of Grand Rapids (C.A.6, 1994), 23 F.3d 990, 1000 (though legally mistaken as to the existence of exigent circumstances to enter house without warrant, police officers were entitled to qualified immunity because it could not be said that "no reasonable officer, objectively assessing the situation, could conclude that there were exigent circumstances excusing the requirement that a warrant be obtained").
Significantly, the availability of qualified immunity is a question of law. O'Brien, supra, at 998; Cook, supra, at 85. Therefore, given a particular set of facts, the issue of whether a public official did not act reasonably (and hence not entitled to qualified immunity) is a matter for the court and, therefore, may properly be determined by summary judgment. Id. Thus, while the court must consider the facts in the light most favorable to the non-moving plaintiff, it is the court, and not the jury, that must determine as a matter of law whether these facts show that defendant violated clearly established legal rights of which a reasonable official would have known. Murphy, supra, citing Poe v. Haydon (C.A.6, 1988), 853 F.2d 418, 425.
Moreover, even on summary judgment, the ultimate burden of proof is on the plaintiff to show that defendant is not entitled to qualified immunity. Gardenhire, supra, at 311; Cook, supra, at 85; Murphy, supra. As such, the trial court must grant summary judgment for defendants if the undisputed facts, and those disputed facts viewed in the plaintiff's favor, fail to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. Cook, supra, at 86; see, also, Gardenhire, supra (noting that summary judgment for defendant would not be appropriate if there is a factual dispute on which the issue of immunity turned or if the undisputed facts show that defendant's conduct did indeed violate clearly established rights).
Given these basic principals, the essential question in this case is whether, viewing the evidence in a light most favorable to appellant, no reasonable police officer would conclude that the momentary stop and detention of appellant was authorized under the Fourth Amendment to the United States Constitution. Appellant has failed to meet this burden.
As appellant concedes, the propriety of Officers Jarrell's and Wolcoff's conduct in this case is dependant upon whether the stop of appellant satisfied the principles announced in Terry v. Ohio (1968),392 U.S. 1, and its progeny, authorizing/governing certain warrantless, investigatory stops under the United States Constitution. Under Terry and its progeny, a police officer, consistent with the Fourth Amendment's general prohibition against warrantless searches and seizures, may briefly stop and investigate an individual where the officer has reasonable, articulable suspicion that the individual has committed or is about to commit a crime. See Terry, supra; United States v. Place (1983), 462 U.S. 696, 702; Florida v. Royer (1983), 460 U.S. 491, 498; United States v. Hensley (1985), 469 U.S. 221, 227-229.
"Reasonable suspicion" is a term of art that is not "`readily, or even usefully, reduced to a neat set of legal rules.'" United States v. Sokolow (1989), 490 U.S. 1, 7, quoting Illinois v. Gates (1983),462 U.S. 213, 232. The term connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry, supra, at 27; see, generally, State v. Ramey (1998), 129 Ohio App.3d 409 . Rather, in order to warrant a brief investigatory stop, "the police officer `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Loza (1994), 71 Ohio St.3d 61, 71, quoting Terry, supra, at 21.
The propriety of such a stop must be viewed in light of the totality of the surrounding circumstances. State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus. Moreover, a reviewing court must view the circumstances through the eyes of the reasonable and prudent police officer on the scene and must give due weight to the police officer's experience and training. State v. Andrews (1991),57 Ohio St.3d 86, 87-88. In short, there must be some minimal level of objective justification for the stop. Ramey, supra, at 414.
Here, undisputed evidence supports a finding of reasonable suspicion. By deposition, Officer Wolcoff testified that he and Officer Jarrell were working in separate police cruisers on the day in question. They received the dispatch of a disturbance involving a man with a gun. After meeting up south of the location of the disturbance, they proceeded north on High Street, with Officer Wolcoff in the lead. Wolcoff testified that, as they were traveling north, "I specifically was looking for people walking down the street to see if I could pick out anybody that matched the description or something that would get my attention to direct me to the suspect involved in the run." (Wolcoff Depo., at 14-15.)
As they approached Fourteenth Avenue, Officer Wolcoff's attention was drawn to appellant, whom Officer Wolcoff saw walking away from High Street in a hurried manner diagonally across the parking area at Fourteenth Avenue. Officer Wolcoff specifically testified as follows:
 A. The first thing that drew my attention to Mr. Scott [appellant] was not his race or clothing description or the fact that he had a bag, it was his ga[i]t, how he was walking away, he was in the area, he was walking away at a very fast pace, appeared to be overtly nervous, and he seemed like he wanted to get out of the area in a hurry.
 Then I observed he was a male black, and I observed his jacket matched the description of the suspect's jacket and I observed he had a bag which matched the description of the bag.
 At that point when I saw Mr. Scott and those factors came to mind I indicated to Ralph — Officer Jarrell, that I think this might be the guy that we're looking for. [Wolcoff Depo., at 27-28.]
Officer Wolcoff signaled to Officer Jarrell that appellant might be the suspect, and Jarrell indicated that he agreed.
Officer Jarrell testified in accord, noting that Officer Wolcoff initially pointed out appellant when they were approaching Fourteenth Avenue from the south, each in their respective cruisers. Officer Jarrell then focused on appellant and saw appellant walking quickly in an angle away from the corner of High Street and Fourteenth Avenue through the adjacent parking lot. According to Officer Jarrell, appellant was holding a brown bag and wearing a coat.
Appellant contends that there are genuine issues of material fact as to the factual basis for the reasons identified by Officers Wolcoff and Jarrell in support of their decision to conduct an investigatory stop of appellant. We find, however, that there is no genuine issue of fact as to the two basic reasons appellant was stopped, i.e.: (1) that he was walking away quickly from the incident location in a manner suggesting that he might be nervous or irritated; and (2) that he generally matched the description of the assailant presented to the officers.
First, it is undisputed that appellant was walking away from the area of the Flying Pizza in a quick manner and that he was angling away from High Street toward Pearl Alley. In his deposition, appellant admitted that he was walking south on High Street, that he passed the Flying Pizza shop, and that, upon approaching Fourteenth Avenue, he saw a panhandler positioned near the corner at Fourteenth Avenue. Appellant further testified that, in an effort to avoid any contact with the panhandler, whom he feared might violently accost him, he picked up his pace and proceeded in a southeasterly direction across the cutoff parking lot at Fourteenth and High Street. Thus, appellant's deposition testimony is consistent with Officer Wolcoff's testimony that appellant appeared nervous and as if he wanted to get out of the area.
Moreover, appellant's affidavit filed in opposition to the motion for summary judgment is not to the contrary. In his affidavit, appellant states that he was "not walking or acting in any nervous way," was walking in a "normal fashion," and did not speed up or act differently in response to seeing the police cruisers. Significantly, appellant does not dispute that he picked up his pace upon seeing the panhandler at the corner of Fourteenth and High Street, and that this conduct occurred prior to seeing the police cruisers. Nor does appellant's characterization of his conduct create a disputed issue of fact as to Officer Wolcoff's interpretation of the very same, undisputed conduct.
Likewise, the undisputed evidence supports the officer's conclusion that appellant generally fit the description of the assailant. While appellant argues that his actual height and weight and his dress on the day in question (in particular, that he was not wearing a coat, that he was wearing a baseball cap, and that he was carrying an umbrella) should have immediately placed the two officers on notice that he was not the suspect for whom they were looking, we disagree.
Appellant is a black man of average height and build, and like the assailant, he was carrying a bag. Appellant also testified that he was wearing shoes with two inch soles on the day in question, thereby making him appear taller than his true 5' 8" height. More importantly, Officer Jarrell specifically testified that civilian descriptions, especially those related to height and weight, are often unreliable. Given Officer Jarrell's uncontroverted testimony in this regard and the limited amount of time available to view appellant, neither appellant's true height or weight, the absence of a coat (an item which could be discarded), nor the existence of a hat and umbrella (items which could be added or otherwise overlooked) were so substantial as to obviously eliminate appellant as a potential suspect.
More importantly, for purposes of qualified immunity, the discrepancies relied upon by appellant fail to establish that Officers Wolcoff and Jarrell acted objectively and unreasonably. As noted by this court in Murphy, "police officers may not be held civilly liable based on such fine distinctions." Murphy, supra. Again, "[w]here the presence of reasonable suspicion is at least `arguable,' such that `officers of reasonable competence could disagree on [the] issue, immunity should be recognized.'" Id., quoting Malley, supra, at 341.
Here, the existence of reasonable suspicion was more than at least arguable. Cf. State v. Comen (1990), 50 Ohio St.3d 206, 211
(investigative stop of defendant's vehicle was justified on basis that the vehicle was spotted within a few blocks of burglarized home, was the only vehicle spotted in the area at that early hour, and had no frost on the windows); State v. McCrone (1989), 63 Ohio App.3d 831, 836-837 (stop justified simply because of defendant's proximity to the residence of the alleged aggravated burglary); see, also, State v. Patterson (1993),95 Ohio App.3d 255, 258 (noting that propriety of investigative stop at a time and place proximate to the crime cannot be viewed from the same perspective as a stop made without the proximity of an immediate criminal event).
Nothing in the cases principally relied upon by appellant is to the contrary. In particular, appellant relies on Wells v. Akron (1987),42 Ohio App.3d 148, for the proposition that police officers are entitled to qualified immunity on summary judgment only if the plaintiff met each element of the description provided. In Wells, however, the court merely held that the investigatory stop of the plaintiff was objectively reasonable since, inter alia, the plaintiff matched each element of the description. Nothing in Wells stands for the proposition that summary judgment may not otherwise be warranted absent such a finding.
Likewise, appellant's reliance on Ingram v. Columbus (C.A.6, 1999),185 F.3d 579, is equally misplaced. In Ingram, at 596, the court reversed summary judgment for the arresting police officers since genuine issues of material fact existed as to whether the arrest of the plaintiff was reasonable given the lack of resemblance between plaintiff and the true suspect. Ingram, however, involved the police officer's mistaken determination of probable cause to make an arrest, a considerably higher standard of proof than that required to justify an investigatory stop under Terry. See, e.g., Gardenhire, supra, 317-318 (holding that evidence justified a Terry stop but not an arrest; affirming denial of summary judgment against arresting officers).
We find, therefore, that the trial court correctly granted summary judgment for Officers Wolcoff and Jarrell on the basis of qualified immunity as to appellant's Section 1983 claim. Appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant contends that the trial court erred in granting summary judgment as to appellant's state law tort claims raised against Officers Wolcoff and Jarrell on the basis of statutory immunity under R.C. 2744.03(A)(6). In particular, appellant contends that there are genuine issues of material fact as to whether appellees acted with malicious purpose, in bad faith, or in a wanton or reckless manner and, therefore, are not entitled to immunity pursuant to R.C. 2744.03(A)(6)(b). We disagree.
Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from civil liability unless one of three exceptions applies: (1) the employee's conduct was manifestly outside the scope of his employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed upon the employee by a section of the Revised Code. It is the second exception that is relevant here.
"Malice" refers to the willful and intentional design to do injury. Piro v. Franklin Twp. (1995), 102 Ohio App.3d 130, 139. "Bad Faith" involves a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. Id. "Wanton" or "reckless" conduct is the failure to exercise any care whatsoever. Farbrey v. McDonald Police Dept. (1994), 70 Ohio St.3d 351, 356. Mere negligence is not wanton misconduct unless the evidence establishes the actor was conscious that his conduct would, in all likelihood, result in an injury. Id.
Here, appellant has failed to present evidence creating a genuine factual dispute that appellees acted with malice, bad faith, or in a wanton or reckless manner. As discussed in our resolution of appellant's first assignment of error, appellees had reasonable suspicion to conduct an investigatory stop of appellant. Appellant cites to no evidence that Officers Wolcoff and Jarrell acted out of ill will toward appellant, that they intended to cause harm to appellant, or that they recognized that their conduct would likely result in injury to appellant. Absent such evidence, the trial court properly granted summary judgment for appellees. See Fabrey; Cook, supra; Linley v. DeMoss (1992),83 Ohio App.3d 594.
For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the trial court is affirmed.
DESHLER, J., concurs. KENNEDY, J., dissents.
[1] Appellant does not appeal the trial court's granting of summary judgment as to his Section 1983 claim against the city of Columbus or Officers Wolcoff and Jarrell in their official capacities.