OPINION
Plaintiff-appellant, Al R. Bordelon, Jr., appeals from the January 23, 2001 decision and entry granting the motion of defendants-appellees Franklin Township, three Franklin Township Trustees, the Franklin Township Police Department, and Franklin Township Police Officer David Ratliff for reconsideration, denying appellant's motion for reconsideration, and granting appellees' motion for summary judgment filed October 22, 1999. For the reasons that follow, we affirm.
On the evening of Friday, March 8, 1996, a strike was in progress at Inland Products, Inc. ("Inland Products"). Appellant, a contract employee of Inland Products, was on company property, sitting in his car watching for interference with trucks coming and going on the property. Appellant had placed his business card where it would be visible through the windshield of the car, settled in with a newspaper, and was running the engine to keep warm. After some hours, appellant fell asleep.
Prior to that evening, appellant had personally visited Franklin Township Chief of Police Michael Castle to request extra police protection at Inland Products because of the impending strike. As a result of appellant's visit, the chief posted a notice on the office bulletin board to make all township officers aware of the labor dispute and the request for extra cruiser attention. In addition, an anonymous telephone call had been made to the company's security tower stating that there might be trouble if drivers crossed the picket line. On the afternoon of March 8, 1996, Lonnie Scarsberry, an employee of Inland Products, reported to police that he had been threatened that he would be shot if he crossed the picket line at Inland Products.
On the evening of March 8, 1996, during an unrelated traffic stop, Grove City police were told by a passing motorist that someone was parked in a gray car near Inland Products alongside Route 104 with a gun. The Grove City police did not obtain the name or license number of the motorist they spoke to, but they phoned in a report to the Franklin County Sheriff, who relayed the report to the Franklin Township Police Department.The codes given by the dispatcher indicated there was a suspicious car and a person with a "long gun," presumably a shotgun or rifle.
Officer Ratliff and Sgt. Huff were dispatched on the call at approximately 10:30 p.m. Officer Ratliff arrived first and spoke to the strikers at the plant entrance. Officer Ratliff stated that the reason he approached the strikers was because of his previous experience with strikes, the note on the bulletin board requesting additional patrols because of problems at Inland Products, and his knowledge that earlier that day someone had threatened to shoot drivers who crossed the picket line.
One of the strikers, Juan DeLuna, told Officer Ratliff that the person in the car parked on Inland Products property had been out pointing a pistol. Officer Ratliff, who was in uniform but not wearing a hat, then approached and knocked on the window of appellant's dark blue car, the car DeLuna had pointed out.
Appellant testified that he was "startled to cognate thought" by someone rapping on the driver's side window. (Bordelon depo., at 103.) Appellant questioned Officer Ratliff as to why he was on company property and who called him. Appellant stated that he was the property owner's agent and that the owner had not called the police, so they should leave the property. Appellant testified that Officer Ratliff then lost his composure and tried to pull him out of the car.
Appellant testified that Officer Ratliff tugged on appellant's sweater and pulled on his arm to get him out of his car. When asked if Officer Ratliff struck him, appellant stated that Officer Ratliff "struck me when he put his hands on me. * * * But not in the normal context of strike. * * * He didn't just put his hands on me. He laid his hands aggressively. And he hit me during the process of doing that with an open hand. * * * And he was mostly pulling on the arm." (Bordelon depo., at 60.)
Appellant resisted Officer Ratliff's pulling by grabbing the car door opening. Sgt. Huff arrived within a minute of Officer Ratliff and observed Officer Ratliff attempting to pull appellant from his car. Sgt. Huff told appellant that the police were there because they had received a report of a person with a gun. Appellant told both officers to stand back.
Q. Okay. So you resisted this pulling?
 A. Absolutely. After I had made him aware that they were on private property and I had told them I would exit the car, I told them stand back.
Q. And did they do that?
A. They did.
Q. All right. They let you get out of the car?
A. Got out of the car. [Bordelon Depo., at 61.]
Because appellant knew Sgt. Huff, appellant stated that he consented to a search of his automobile, opened the door for them, and asked them to search every part of the car. Sgt. Huff testified:
 A. Well, after I asked him or tried to explain to him why we was there and stuff and asked him, you know, we could resolve this if he would step out of the car and let us look at the car, he asked if I had a search warrant again.
I said, No, sir, we do not.
And he says, You cannot search my car.
And I said, Thank you.
 And I would have to say maybe two, three minutes went by. He got out of the car, opened the doors up, opened the trunk up and said, Search it. [Huff Depo., at 31.]
Appellant testified: "In fact, he missed a spot. I said, no, you go back and search every speck. I said, I am going to open up this trunk and I want you to look in this trunk." (Bordelon Depo. at 64-65.) After the search of appellant's car, no weapons were found.
Sgt. Huff and Officer Ratliff then called Detective Goldsberry of the Franklin County Sheriff's Department. After consulting with Detective Goldsberry, they issued appellant a citation for obstructing official business in violation of R.C. 2921.31. The citation was later dismissed in Franklin County Municipal Court.
Appellant filed suit alleging violations of Section 1983, Title 42, U.S. Code, contending that Officer Ratliff's conduct and the township's inadequate training and discipline of its police officers led to appellant's illegal false arrest, malicious prosecution, excessive use of force, and intentional infliction of emotional distress. Appellees moved for summary judgment, and the trial court granted summary judgment on all claims except appellant's claims of civil rights violations stemming from the issuance of a citation for obstructing official business.
The parties filed motions for reconsideration of the trial court's decision. Upon reconsideration, the trial court determined that it had used the incorrect legal standard to determine if Officer Ratliff's issuing of a citation violated appellant's civil rights. The trial court then determined that appellees were entitled to qualified immunity. Accordingly, the trial court granted appellees' motion for summary judgment in its entirety.
It is from this entry that appellant appeals, raising the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
 The Trial Court erred in granting Summary Judgment in favor of Franklin Township on the Appellants [sic] failure to train and/or inadequate training, supervision, and discipline claims under 42 U.S.C. § 1983 and Appellants [sic] assault and excessive force claims under 42 U.S.C. § 1983.
ASSIGNMENT OF ERROR NO. 2
 The Trial Court erred in granting Summary Judgment on the Appellants [sic] claims of improper search, seizure, detention, and arrest without probable cause under 42 U.S.C. § 1983.
ASSIGNMENT OF ERROR NO. 3
 The Trial Court erred in granting Summary Judgment on the Appellants [sic] claim of malicious prosecution, misuse of a legal process and/or prosecution without probable cause under 42 U.S.C. § 1983.
ASSIGNMENT OF ERROR NO. 4
 The Trial Court erred in granting the Defendants Summary Judgment based upon Qualified Immunity.
Because the propriety of Officer Ratliff's initial stop and seizure of appellant affects all of appellant's assignments of error, we elect to address appellant's second assignment of error first. In addition, all of appellant's assignments of error relate to appellant's contention that summary judgment was improperly granted and, therefore, we set forth the applicable standard of review here.
Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:
 the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8. As such, we stand in the shoes of the trial court and conduct an independent review of the record.
In his second assignment of error, appellant asserts that Officer Ratliff's initial investigative stop and the actions that flowed from that stop were unjustified and unsupported by probable cause. We disagree.
The propriety of Officer Ratliff's conduct in this case is dependent upon whether the initial stop and seizure of appellant satisfied the principles announced in Terry v. Ohio (1968), 392 U.S. 1, and its progeny, authorizing and governing certain warrantless, investigatory stops under the United States Constitution. Under Terry and its progeny, a police officer, consistent with the Fourth Amendment's general prohibition against warrantless searches and seizures, may briefly stop and investigate an individual where the officer has reasonable, articulable suspicion that the individual has committed or is about to commit a crime. See Terry; United States v. Place (1983), 462 U.S. 696,702; Florida v. Royer (1983), 460 U.S. 491, 498; United States v. Hensley (1985), 469 U.S. 221, 227-229.
"Reasonable suspicion" is a term of art that is not "`readily, or even usefully, reduced to a neat set of legal rules.'" United States v. Sokolow (1989), 490 U.S. 1, 7, quoting Illinois v. Gates (1983),462 U.S. 213, 232. The term connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry, at 27; see, generally, State v. Ramey (1998), 129 Ohio App.3d 409. Rather, in order to warrant a brief investigatory stop, "the police officer `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Loza (1994), 71 Ohio St.3d 61, 71, quoting Terry, at 21.
The propriety of such a stop must be viewed in light of the totality of the surrounding circumstances. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. Moreover, a reviewing court must view the circumstances through the eyes of the reasonable and prudent police officer on the scene and must give due weight to the police officer's experience and training. State v. Andrews (1991), 57 Ohio St.3d 86,87-88. In short, there must be some minimal level of objective justification for the stop. Ramey, at 414. The "reasonableness of official suspicion must be measured by what the officer knew before" the officer made the initial stop. See Florida v. J.L. (2000), 529 U.S. 266. The determination of whether a particular stop was based on reasonable, articulable suspicion of criminal activity requires the state to produce evidence from which a court may independently review whether "the suspicion of criminal activity on which the officers acted was one that a reasonable and prudent officer would have formed." See State v. Pauley (Jan. 30, 1998), Montgomery App. No. 16231, unreported. And "even completely legal conduct might, under some circumstances, justify a reasonable suspicion that criminal activity is taking place." Ramey, at 414.
Here, Officer Ratliff was dispatched on a "gun run" to a site where he had previously been alerted to provide extra patrol attention due to an ongoing strike and threats of violence. In an attempt to investigate further, Officer Ratliff spoke to a striker outside the entrance to the plant who told him that a man in the car (that turned out to be appellant's) had been pointing a gun at the strikers. Regardless of whether there were inconsistencies between the dispatch and the striker's report, at that point, Officer Ratliff had a report from a citizen informant who had allegedly personally observed what appeared to be criminal conduct. "Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable." State v. Loop (Mar. 14, 1994), Scioto App. No. 93CA2153, unreported. Under the totality of the circumstances, Officer Ratliff had a reasonable suspicion to investigate further. Officer Ratliff then approached appellant's car and rapped on his window.
Appellant alleges that Officer Ratliff unlawfully seized him by forcibly attempting to remove him from his vehicle, and after he lawfully resisted, cited him for obstructing official business without probable cause. It appears that Officer Ratliff asked appellant to step out of his car immediately after he approached the vehicle and encountered appellant. In other words, appellant was required to comply with a police order to get out of his car as part of a reasonable momentary detention for the purpose of investigating whether appellant was the man who had been reported as pointing a gun at a striker. This is consistent with Terry. For example, when a person is being detained for a routine traffic stop, the additional intrusion represented by requiring that person to get out of his car is de minimis, and is not protected by theFourth Amendment to the United States Constitution. Pennsylvania v. Mimms (1977), 434 U.S. 106, 111. In the face of legitimate concerns about officer safety, requiring appellant to step out of his car was a reasonably warranted intrusion under these facts and not violative of theFourth Amendment.
After resisting Officer Ratliff's command to exit the vehicle, appellant eventually agreed to exit the vehicle and consented to a search of his vehicle. The charge of obstructing official business stemmed from the struggle when appellant refused to leave his vehicle. R.C. 2921.31
provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties." Absent bad faith on the part of a law enforcement officer, an occupant of business premises cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances. State v. Pembaur (1984), 9 Ohio St.3d 136, syllabus. Here, appellant has presented no evidence of bad faith on the part of Officer Ratliff. Appellant admitted resisting Officer Ratliff's command to exit his vehicle because he believed he did not have to comply with the officer's command on private property. This was not, however, a consensual encounter between a police officer and a citizen. This was an investigatory stop pursuant to Terry to determine if appellant had been pointing a gun at the strikers.
The Supreme Court has held that the Fourth Amendment's ban on unreasonable seizures sets forth the right of an ordinary citizen to be free from the use of excessive force during an arrest or investigatory stop. See Graham v. Connor (1989), 490 U.S. 386, 394. In determining whether an officer's use of force was "reasonable," courts must perform a "careful balancing of the `nature and intrusion on the individual'sFourth Amendment interests' against the countervailing governmental interests at stake." Id., quoting Tennessee v. Garner (1985), 471 U.S. 1,8. The "reasonableness" inquiry in an excessive force case is an objective one; consequently, we must consider "whether the officers' actions are `objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, at 397. Moreover, we must judge the officers' reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. The court cautioned that the "proper application" of this reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.
With these facts and circumstances in mind, it is apparent that Officer Ratliff's use of force was reasonable under the circumstances. Officer Ratliff was responding at night to a report of a man sitting in a car with a gun. Officer Ratliff was aware that violence with a gun had previously been threatened at that location. Officer Ratliff had a reasonable suspicion that his safety or the safety of others could have been at risk. Consequently, Officer Ratliff had an objectively reasonable perception of danger that entitled him to ask the occupant of the car to step outside the vehicle and to pull on his sweater and arm when the occupant refused to leave the vehicle, particularly, as here, the officer stopped using physical force when appellant agreed to leave the car. Officer Ratliff's actions were constitutionally permissible. Accordingly, appellant's claims for improper search, seizure, detention, and arrest without probable cause fail as a matter of law. The second assignment of error is not well-taken and is overruled.
Because Officer Ratliff did not violate appellant's constitutional rights, there is no violation of civil rights for which the township could be liable under a failure to train theory. Consequently, appellant's first assignment of error is not well-taken and is overruled.
In his third assignment of error, appellant contends the trial court erred in granting summary judgment on his claim of malicious prosecution in violation of his constitutional rights. Appellant contends that evidence of malice exists because the police officers "trumped up" the charge of obstructing official business and the township continued to prosecute him even though no probable cause existed for the charge. Appellees have raised the defense of qualified immunity in connection with this claim and, as such, we address appellant's fourth assignment of error at this time as well.
This court recently addressed the issue of qualified immunity in Scott v. City of Columbus (Mar. 30, 2001), Franklin App. No. 00AP-689, unreported. In Scott, this court reviewed the applicable standards, stating:
 Under the doctrine of qualified immunity, public officials, including police officers, who perform discretionary functions are generally entitled to immunity from suit in a Section 1983 action so long as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 85, citing Harlow v. Fitzgerald (1982), 457 U.S. 800, 818; Gardenhire v. Schubert (C.A.6, 2000), 205 F.3d 303, 310-311. "The doctrine [of qualified immunity] recognizes that these officials must routinely make close decisions in the exercise of their authority and that the law that guides their conduct is often ambiguous and difficult to apply." Murphy v. Reynoldsburg (Aug. 8, 1991), Franklin App. No. 90AP-1296, unreported, reversed on other grounds (1992), 65 Ohio St.3d 356. "The essential rationale for granting qualified immunity is that officials should not be punished for the vigorous performance of their duties by being held liable for actions that a reasonable person would not have known violated the rights of another." Piphus v. Blum (1995), 108 Ohio App.3d 218, 224. Qualified immunity, therefore, encourages government officials to act without hesitation when confronted with a problem that requires a quick and decisive response and ameliorates the concern that most persons would be reluctant to participate in public service in the absence of such immunity. Id.
 The standard for qualified immunity is one of objective reasonableness. As such, claims of qualified immunity are to be analyzed on a fact specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information that he possessed. Pray v. Sandusky (C.A.6, 1995), 49 F.3d 1154, 1158; see, generally, Hicks v. Leffler (1997), 119 Ohio App.3d 424, 427-428. The contours of the right alleged to have been violated must be sufficiently clear such that a reasonable official would understand that, what he is doing, violates that right. Anderson v. Creighton (1987), 483 U.S. 635, 640. "[If] officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs (1986), 475 U.S. 335, 341; see, also, Bruce v. Village of Ontario (Nov. 24, 1998), Richland App. No. 98-CA-9-2, unreported ("[a] violation of clearly established law must be so clear as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional").
 Thus, even if the official's conduct is ultimately proved legally wrong, he still will be entitled to immunity as long as his decision was objectively reasonable. Pray, supra, at 1158; see, e.g., O'Brien v. City of Grand Rapids (C.A.6, 1994), 23 F.3d 990, 1000 (though legally mistaken as to the existence of exigent circumstances to enter house without warrant, police officers were entitled to qualified immunity because it could not be said that "no reasonable officer, objectively assessing the situation, could conclude that there were exigent circumstances excusing the requirement that a warrant be obtained").
 Significantly, the availability of qualified immunity is a question of law. O'Brien, supra, at 998; Cook, supra, at 85. Therefore, given a particular set of facts, the issue of whether a public official did not act reasonably (and hence not entitled to qualified immunity) is a matter for the court and, therefore, may properly be determined by summary judgment. Id. Thus, while the court must consider the facts in the light most favorable to the non-moving plaintiff, it is the court, and not the jury, that must determine as a matter of law whether these facts show that defendant violated clearly established legal rights of which a reasonable official would have known. Murphy, supra, citing Poe v. Haydon (C.A.6, 1988), 853 F.2d 418, 425.
 Moreover, even on summary judgment, the ultimate burden of proof is on the plaintiff to show that defendant is not entitled to qualified immunity. Gardenhire, supra, at 311; Cook, supra, at 85; Murphy, supra. As such, the trial court must grant summary judgment for defendants if the undisputed facts, and those disputed facts viewed in the plaintiff's favor, fail to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. Cook, supra, at 86; see, also, Gardenhire, supra (noting that summary judgment for defendant would not be appropriate if there is a factual dispute on which the issue of immunity turned or if the undisputed facts show that defendant's conduct did indeed violate clearly established rights).
Given these basic principles, the essential question is whether, viewing the evidence in a light most favorable to appellant, no reasonable police officer would conclude that charging appellant with obstructing official business was authorized under the Fourth Amendment to the United States Constitution. Appellant has failed to meet this burden. Appellant's resistance to Officer Ratliff's requirement that appellant exit his car clearly impeded Officer Ratliff in performing his duty to secure his safety and to investigate whether appellant had pointed a gun at the strikers at the Inland Products Plant. As such, appellant cannot demonstrate that no reasonable police officer would believe that appellant violated R.C. 2921.31. The third and fourth assignments of error are not well-taken and are overruled.
Based on the foregoing, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and PETREE, JJ., concur.