PATTON, Appellant,

v.

WOOD COUNTY HUMANE SOCIETY et al., Appellees.

[Cite as *Patton v. Wood Cty. Humane Soc.*, 154 Ohio App.3d 670, 2003-Ohio-5200.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–03–012.

Decided Sept. 30, 2003.

---

Rayle, Matthews & Coon and Max E. Rayle, for appellant.

Meister, Ayers & Meister and Marc J. Meister, for appellees.

KNEPPER, Judge.

{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, in which the trial court granted summary judgment to appellee, Kay Chapman, and her codefendant, the Wood County Humane Society, and dismissed a complaint filed by appellant, Fred Patton, in which he maintained an action for replevin and sought damages for conversion of property, violation of civil rights, vicarious liability, punitive damages, and malicious prosecution.

{¶ 2} Appellant sets forth the following as his sole assignment of error on appeal:

{¶ 3} "The trial court committed reversible error in granting summary judgment of dismissal to [defendant/appellee] Chapman since genuine issues as to material fact existed with regard to each cause of action asserted and the applicable law did not support the judgment rendered."

{¶ 4} On appeal, appellant asserts that the trial court erred by granting summary judgment only as to appellee Kay Chapman. Appellant does not dispute the granting of summary judgment to the Wood County Humane Society. Appellant's assignment of error is broken down into four separate arguments, which appellant articulates as follows:

{¶ 5} "A. The voluntariness of the conveyance executed on January 6, 2001, was subject to material disputes of fact precluding summary judgment.

{¶ 6} "B. The issue of whether probable cause existed to support the second search warrant remained a question of contested fact precluding a finding of statutory immunity under R.C. 2744.03(A)(6).

{¶ 7} "C. Summary judgment on qualified immunity was improper since the question of probable cause to issue the warrant in question remained subject to genuine dispute.

{¶ 8} "D. [Appellant] was entitled to a jury determination on the claim for malicious prosecution."

{¶ 9} In reviewing a summary judgment, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 10} Initially, the party seeking summary judgment bears the burden of delineating which areas of the opponent's claim raise no genuine issues of material fact. The moving party may support its assertions "by affidavits or

otherwise as allowed by Civ.R. 56(C)." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Once the moving party meets its burden, the nonmoving party "then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 11} In considering appellant's arguments in support of his assignment of error, this court has reviewed the parties' briefs, the decision of the trial court, the entire record, and the relevant statutory and case law, and applied the law to the facts of this case. After doing so, we agree with the trial court's conclusion that the record demonstrates that appellant was not under duress when he signed the agreement that included the conveyance of his dogs to the custody of the Wood County Humane Society. We further agree with the trial court that Chapman is entitled to statutory immunity pursuant to R.C. 2744.03(A)(6), because the search warrants she executed were based on probable cause, and she did not act outside the scope of her employment, or with malicious purpose, bad faith, or in a wanton or reckless manner. For those same reasons, we agree with the trial court that Chapman is entitled to qualified immunity from liability pursuant to Section 1983, Title 42, U.S.Code. Finally, we agree with the trial court that appellant has not demonstrated that Chapman brought criminal charges against him for animal neglect without probable cause.

{¶ 12} Upon consideration of the foregoing, we find that the trial court has correctly considered the pertinent facts in this case and correctly applied the law to those facts and rendered judgment accordingly. We therefore adopt the well-reasoned decision of the trial court as our own. (See Appendix A.)

{¶ 13} On consideration whereof, this court further finds that no genuine issue of fact remains and, when considering the evidence presented in the light most favorable to appellant, appellee Chapman is entitled to summary judgment as a matter of law. Appellant's sole assignment of error is not well taken.

{¶ 14} The judgment of the Wood County Court of Common Pleas is hereby affirmed. Court costs of these proceedings are assessed to appellant Fred Patton.

Judgment affirmed.

PETER M. HANDWORK, P.J., and ARLENE SINGER, J., concur.

**APPENDIX A**

Decided Sept. 30, 2002

JOSEPH N. SCHMENK, Judge.

{¶ 15} This matter comes before the court on defendants' motion for summary judgment filed August 27, 2002, and the memoranda in support and opposition thereto.

## I. Factual Background

{¶ 16} This case involves the seizure of animals by defendants on January 6, 2001, and March 21, 2001, from plaintiff. According to the undisputed facts, defendants received a phone call indicating that plaintiff was keeping horses, sheep, and a pony outside without shelter during cold weather. Defendant Chapman, along with an associate, went to plaintiff's residence to investigate the cruelty report on December 31, 2000. Plaintiff denied permission for them to look at the animals. However, according to defendant Chapman, plaintiff indicated that the animals did not have shelter when he was asked about shelter.

{¶ 17} Defendant Chapman then went to Bowling Green Municipal Court and obtained a search warrant to seize the horses and the sheep. Defendant Chapman executed the search warrant on January 6, 2002. While there, defendant Chapman discovered three dogs, a pony, two sheep, and three horses outside. Two of the dogs had been chained or tied to metal barrels and the other dog to a dog house. There did not appear to be any water or food for the dogs, and they all were thin and looked like they had some frostbite or been badly bitten down by flies. The horses and pony were thin and their hooves were in bad shape. They also did not appear to have any water or shelter. The sheep were in need of shearing and also did not appear to have any water or shelter.

{¶ 18} At some point, plaintiff appeared in his backyard. A discussion between defendant Chapman and plaintiff occurred, during which defendant Chapman indicated that she wanted to take the dogs but was willing to work with plaintiff regarding the other animals if he agreed to sign a conveyance of the dogs and agreed to some conditions regarding the other animals. Otherwise, all of the animals would be taken. Plaintiff asked whether he could speak with an attorney and made some phone calls, eventually leaving a message for his attorney. Plaintiff eventually signed the conveyance for the dogs and agreed to provide a three-sided shelter for the horses and sheep and to have the horses' hooves trimmed.

{¶ 19} Defendants then received a letter from plaintiff's attorney that indicated that plaintiff was revoking the agreement because it had been exacted through coercion. Plaintiff also demanded the return of his dogs. Counsel for defendants responded to the letter and indicated that the investigation would continue and refuted plaintiff's allegations of coercion and illegal seizure of the dogs.

{¶ 20} A second search warrant was obtained, and defendant Chapman executed it on March 21, 2001. This time, defendant Chapman seized the three horses, the two sheep, and the pony.

{¶ 21} Plaintiff filed his complaint on April 17, 2001. The complaint contained causes of action for replevin, conversion, civil rights violations under Section 1983, Title 42, U.S.Code, vicarious liability, and punitive damages. Three criminal complaints were filed against plaintiff in Bowling Green Municipal Court, one on September 17, 2001, and two on October 18, 2001, regarding the animals. These charges were eventually voluntarily dismissed by the prosecutor, and plaintiff supplemented his complaint by adding a cause of action for malicious prosecution.

{¶ 22} Defendants have now moved for summary judgment on the claims for conversion, civil rights violations, vicarious liability, punitive damages, and malicious prosecution.

## II. Summary Judgment Standard

{¶ 23} Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material facts; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The burden of showing that no genuine issue exists as to any material fact falls upon the moving party requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. However, a party who opposes a motion for summary judgment may not rest upon the allegations or denials set forth in these pleadings but must set forth specific facts in his response by affidavit or otherwise, demonstrating the existence of a genuine issue of material fact in order to prevent the granting of a motion for summary judgment. Id.; Civ.R. 56(E).

{¶ 24} The party opposing the motion has the burden of producing evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, at paragraph three of the syllabus.

## III. Analysis

{¶ 25} Defendants argue that they are entitled to summary judgment on the basis of plaintiff's voluntary conveyance, statutory and qualified immunity, lack of malice, and probable cause. Plaintiff disputes that he voluntarily conveyed the

animals and that defendants had probable cause and argues that there are material issues of fact.

### A. Voluntariness of Conveyance

{¶ 26} Defendants argue that the seizure of plaintiff's dogs was lawful because plaintiff voluntarily conveyed the animals. Plaintiff, however, maintains that he was coerced into signing the agreement, and therefore it is void. Further, plaintiff contends that he revoked the agreement several days later.

{¶ 27} "To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 551 N.E.2d 1249, syllabus. The *Blodgett* court also set forth the following general factors necessary to establish a cause of action for duress: (1) one party involuntarily accepted terms imposed by the other; (2) the party seeking to establish duress was operating under circumstances permitting no other alternative but to comply; and (3) the circumstances were the result of the coercive acts of the other party to the agreement. Id. at 246, 551 N.E.2d 1249.

{¶ 28} Duress results if the party "was subjected to improper threats which deprived that person of any reasonable alternative but to assent to the terms of the person making the threat." *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 108, 614 N.E.2d 765. There is generally no improper threat, however, if the party is legally entitled to an action. Id.

{¶ 29} Defendants contend that there was no coercion. Plaintiff was allowed to seek the advice of counsel prior to signing the conveyance. Defendants further argue that defendant Chapman was authorized by R.C. 1717.13 to take the dogs even without plaintiff's consent. R.C. 1717.13 provides: "When, in order to protect any animal from neglect, it is necessary to take possession of it, any person may do so. When an animal is impounded or confined, and continues without necessary food, water, or proper attention for more than fifteen successive hours, any person may, as often as is necessary, enter any place in which the animal is impounded or confined and supply it with necessary food, water, and attention, so long as it remains there, or, if necessary, or convenient, he may remove such animal; and he shall not be liable to an action for such entry * * *."

{¶ 30} In his deposition, Patton stated that he was reluctant to sign the agreement and that he thought it was fictitious. He further testified that defendant Chapman told him that she would take the rest of the animals if he did not sign the agreement. However, plaintiff did not deny the condition of the dogs, nor did he deny that the dogs were outside without food or water.

{¶ 31} Based upon the evidence before the court, the court finds that plaintiff voluntarily signed the conveyance.

## B.   Statutory Immunity

{¶ 32} Defendants claim that they are entitled to immunity pursuant to R.C. Chapter 2744.   Plaintiff argues that R.C. 2744.09(E) prohibits defendants from claiming statutory immunity.   R.C. 2744.09(E) provides that R.C. Chapter 2744 does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions."

{¶ 33} In his complaint, plaintiff does allege a cause of action under Section 1983, Title 42, U.S.Code. Section 1983 "provides a remedy to those persons whose federal rights have been violated by government officials." *Gubanc v. Warren* (1998), 130 Ohio App.3d 714, 718, 721 N.E.2d 124.   Therefore, pursuant to R.C. 2744.09(E), the immunities found within R.C. Chapter 2744 do not apply to Section 1983 actions.   However, defendants may still be entitled to immunity on the state-law tort claims.

### 1.   Defendant Wood County Humane Society

{¶ 34} R.C. 2744.02(A) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The first question before the court is whether the Wood County Humane Society is a political subdivision and therefore entitled to immunity under R.C. 2744.01 et seq.   In *Studer v. Seneca Cty. Humane Soc.* (May 4, 2000), Seneca App. No. 13–99–59, 2000 WL 566738, the Third Appellate District found that a county humane society is a political subdivision for purposes of the immunity statutes.   In *Earl v. Wood Cty. Humane Soc.*, Wood App. No. WD–01–061, 2002-Ohio-3156, 2002 WL 1396696, the Sixth Appellate District concurred with the *Studer* decision; therefore, the Wood County Humane Society is a political subdivision for purposes of the immunity statutes.

{¶ 35} R.C. Chapter 2744 sets forth a three-tier analysis.   First, R.C. 2744.02 provides a political subdivision with blanket immunity for its governmental and proprietary functions.   Next, R.C. 2744.02(B) provides five exceptions to immunity.   If one of the five exceptions applies and exposes a political subdivision to liability, the final step is to determine whether any of the additional defenses or immunities contained in R.C. 2744.03 apply.

{¶ 36} In *Studer* and in *Earl*, the Third and Sixth Appellate Districts determined that the only possible exception to immunity that could apply was R.C.

2744.02(B)(2), which provides that "[e]xcept as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." However, both courts found that humane societies are engaged in a governmental function and therefore none of the exceptions to immunity under R.C. 2744.02(B) applied. Defendant Wood County Humane Society is therefore entitled to statutory immunity on plaintiff's state-law tort claims.

## 2. Defendant Chapman

{¶ 37} R.C. 2744.03(A)(6) grants blanket tort immunity to defendant Chapman as an employee of a political subdivision when she performs governmental functions. Pursuant to statute, plaintiff can overcome this immunity only by offering evidence either that defendant Chapman's acts or omissions were manifestly outside the scope of employment or that she acted with malicious purpose, and bad faith, or in a wanton or reckless manner.

{¶ 38} Plaintiff argues that defendant Chapman acted with malicious purpose, in bad faith, or in a wanton or reckless manner because the search warrant she secured was obtained in part with false or recklessly untrue information. Specifically, with regard to the first search warrant, plaintiff argues that defendant Chapman speculated that the animals had no food or water and that the hay was mostly weeds. Plaintiff also contends that R.C. 959.13 does not require the type of shelter that defendants wanted. For the second search warrant, plaintiff claims that defendant Chapman made a material omission of fact when she did not disclose that plaintiff's attorney had sent a letter revoking the agreement and that defendant Chapman did not have any personal knowledge of animal neglect since the first search warrant. In essence, plaintiff claims that defendant Chapman did not have probable cause for either search warrant.

{¶ 39} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, citing *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527. Further, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of the

reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. Id. at paragraph two of the syllabus.

{¶ 40} In this case, defendant Chapman testified in her deposition that when she went to his residence on December 31, 2000, plaintiff told her that he did not have shelter for horses and sheep. Defendant Chapman was also denied access to the animals and their environment by plaintiff. While plaintiff now contends that the tree line on his property provides a sufficient windbreak in accordance with R.C. 959.13, there is no evidence that he told this to defendant Chapman on December 31, 2000. The other statements in the application for the first search warrant arose from a cruelty report by a known citizen informant. Defendant Chapman's reliance on the January 6, 2001 agreement for the second search warrant was also appropriate.

{¶ 41} Based upon the evidence before the court, the court finds that the search warrants were supported by probable cause, that defendant Chapman's acts or omissions were not manifestly outside the scope of employment, and that she did not act with malicious purpose and bad faith, or in a wanton or reckless manner. Therefore, defendant Chapman is entitled to statutory immunity.

## C. Qualified Immunity

{¶ 42} Section 1983, Title 42, U.S.Code provides: "Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *." For a plaintiff to prevail on a Section 1983 claim, "(1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." 1946 St. Clair Corp. v. Cleveland (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456. In this case, plaintiff alleges that his Fourth and Fourteenth Amendment rights were violated.

{¶ 43} Under the doctrine of qualified immunity, public officials who perform discretionary functions are generally entitled to immunity from suit in a Section 1983 action so long as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 85, 658 N.E.2d 814, citing Harlow v. Fitzgerald (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396;

*Gardenhire v. Schubert* (C.A.6, 2000), 205 F.3d 303, 310–311. "The essential rationale for granting qualified immunity is that officials should not be punished for the vigorous performance of their duties by being held liable for actions that a reasonable person would not have known violated the rights of another." *Piphus v. Blum* (1995), 108 Ohio App.3d 218, 224, 670 N.E.2d 518. Qualified immunity, therefore, encourages government officials to act without hesitation when confronted with a problem that requires a quick and decisive response and ameliorates the concern that most persons would be reluctant to participate in public service in the absence of such immunity. Id.

{¶ 44} The standard for qualified immunity is one of objective reasonableness. As such, claims of qualified immunity are to be analyzed on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information that he possessed. *Pray v. Sandusky* (C.A.6, 1995), 49 F.3d 1154, 1158; see, generally, *Hicks v. Leffler* (1997), 119 Ohio App.3d 424, 427–428, 695 N.E.2d 777.

{¶ 45} Because the court has already found that defendant Chapman did not act with malicious purpose, bad faith, or in a wanton or reckless manner and that the search warrants were supported by probable cause, defendants are entitled to qualified immunity on the Section 1983 claim.

### D. Malicious Prosecution

{¶ 46} The tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions. *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 84, 564 N.E.2d 440. The elements of the tort of malicious prosecuting claim are "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus.

{¶ 47} The Supreme Court of Ohio, in *Criss*, 56 Ohio St.3d at 84–85, 564 N.E.2d 440, stated that the element of malice "turns directly on the defendant's state of mind. Malice is the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent. * * * For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice. * * *"

{¶ 48} In *Rogers v. Barbera* (1960), 170 Ohio St. 241, 246, 10 O.O.2d 248, 164 N.E.2d 162, the Ohio Supreme Court defined "probable cause" as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves

to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged."

{¶ 49} Importantly, the lack of probable cause generally becomes the essence of a claim for malicious prosecution for the reason that malice may be inferred if probable cause was not present. *Fair v. Litel Communication, Inc.* (Mar. 12, 1998), Franklin App. No. 97APE06–804, 1998 WL 107350. However, there is no requirement that the defendant must have evidence that will ensure a conviction. *Epling v. Pacific Intermountain Express Co.* (1977), 55 Ohio App.2d 59, 62, 9 O.O.3d 220, 379 N.E.2d 239.

{¶ 50} In her deposition, defendant Chapman testified that the condition of the animals was worse on March 21, 2001. Also, a veterinarian recommended that one of the horses and the pony be euthanized shortly after their seizure due to the condition of the animals. Therefore, the court finds that there was probable cause for criminal prosecution. Plaintiff's claim for malicious prosecution is thus not well taken.

IV. Conclusion

{¶ 51} IT IS THEREFORE ORDERED that defendants' motion for summary judgment is hereby granted. Counts two through six are hereby dismissed.