[Cite as *Wiggins v. Kumpf*, 2015-Ohio-201.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ERIC L. WIGGINS | : | |
| | : | Appellate Case No. 26263 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 13-CV-4440 |
| v. | : | |
| | : | (Civil Appeal from |
| MARK KUMPF, et al. | : | Dayton Municipal Court) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of January, 2015.

. . . . . . . . . . .

DANIEL E. WHITELEY, JR., Atty. Reg. #0033866, 602 Main Street, Suite 1309, Cincinnati, Ohio 45202
       Attorney for Plaintiff-Appellant

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
       Attorneys for Plaintiff-Appellees

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Eric Wiggins appeals from a trial court's entry of summary judgment on his claims for false arrest, defamation of character, and malicious prosecution. We affirm.

## I. FACTS

{¶ 2} Mark Kumpf is the chief county dog warden for Montgomery County, Ohio, and runs the Animal Resource Center, the county's animal shelter. As the dog warden, Kumpf, and his deputies, are required to enforce statutes governing dogs, which cover licensing, animal cruelty, and dogfighting. In November 2012, Kumpf was called to Wiggins's home after children walking nearby saw a dead dog hanging in the garage. Kumpf knocked on the front door of the house, but no one answered because Wiggins was on vacation. Looking around the property, Kumpf saw, in addition to the dead hanging dog, five live dogs outside, some of which were pitbulls, and he heard another dog inside the garage barking. He saw little water available for the dogs outside to drink and saw a female pitbull that appeared to have a distended uterus. Kumpf noticed that several of the pitbulls had cropped ears and several were chained to dog houses with heavy chains. He also saw "spring poles" with cowhides hanging from them. Kumpf checked the county's dog-license records and discovered that while Wiggins had a kennel license for five Presa Canario dogs he had no license for the pitbulls.

{¶ 3} Based on what Kumpf saw and learned, he suspected violations of dog licensing, animal cruelty, and dogfighting statutes. He prepared an affidavit and applied to a judge for a search warrant. The judge issued the warrant, and immediately after, Kumpf, some of his deputies, and some Sheriff's deputies, went to Wiggins's property and executed it. Afterwards, Kumpf continued to supervise the investigation and collate information, which he then presented to the prosecutor's office. As a result Wiggins was charged with multiple felonies, but a grand jury refused to indict him, returning a "no true bill" of indictment, so the prosecutor dismissed the charges.

{¶ 4} Wiggins filed a complaint, in July 2013, against Kumpf and Animal Resource Center asserting claims for false arrest, defamation of character, and malicious prosecution. The complaint alleges that Kumpf made some of the statements in his affidavit falsely, maliciously, and without probable cause. Later, Wiggins moved the trial court to order the disclosure of Kumpf's grand jury testimony. The court overruled the motion for disclosure, concluding that Wiggins had not demonstrated a particularized need.[1] Thereafter, Kumpf and the Center moved for summary judgment based on their assertion of immunity from civil liability under R.C. 2744.03. The trial court granted the motion.

{¶ 5} Wiggins appealed.

## II. ANALYSIS

{¶ 6} Wiggins assigns error to the overruling of his motion for disclosure of grand jury testimony and to the entry of summary judgment.

### A. Grand Jury Testimony

{¶ 7} The first assignment of error alleges that the trial court erred by overruling Wiggins's motion for disclosure of grand jury testimony.

{¶ 8} "There is a long history of secrecy attendant to grand jury proceedings." *State v. Webb*, 2d Dist. Greene No. 2005 CA 52, 2006-Ohio-1113, ¶ 12. A court may order disclosure of evidence presented to a grand jury "only after the court carefully weighs the need to maintain the secrecy of the grand jury proceedings against petitioner's need for the information and determines that justice can only be done if disclosure is

---

[1]Wiggins filed an interlocutory appeal (case no. CA26037) of the order denying his motion. We dismissed the appeal for lack of a final, appealable order.

made." *Petition for Disclosure of Evidence*, 63 Ohio St.2d 212, 218, 407 N.E.2d 513 (1980). The petitioner must show that " 'a particularized need for disclosure exists which outweighs the need for secrecy.' " *State v. Greer*, 66 Ohio St.2d 139, 148, 420 N.E.2d 982 (1981), quoting *State v. Patterson*, 28 Ohio St.2d 181, 277 N.E.2d 201 (1971), paragraph three of the syllabus. Contrary to Wiggins's assertion in his brief, the particularized-need test applies in civil cases too. *See id.* (noting that the Court in *Petition for Disclosure of Evidence*, a civil case, "referred to the particularized need test in the allowance of grand jury testimony to be used in a civil trial"). The test is satisfied if, considering all of the surrounding circumstances, "it is probable that the failure to disclose the testimony will deprive the petitioner of a fair adjudication of a pending action." *Webb* at ¶ 12, citing *Greer* at paragraph three of the syllabus. This determination is within the trial court's discretion. *Id.*, citing *Greer* at 148.

{¶ 9} In his motion for disclosure, Wiggins says that he needs Kumpf's grand jury testimony "[i]n order to prove his claim for malicious prosecution." (Plaintiff's Motion for Disclosure of Grand Jury Testimony, 2). "Wiggins has the burden to prove that defendant Kumpf acted with a malicious purpose," he continues, "and, as such, what Kumpf *may* have told the grand jury *may* corroborate that allegation and prove the claim." (Emphasis added.) (*Id.*). Wiggins wanted to use Kumpf's grand jury testimony during his (Kumpf's) deposition "for possible impeachment purposes." (*Id.*). The trial court concluded that this is not a particular need and does not outweigh the secrecy of grand jury proceedings. We agree.

{¶ 10} A "speculative claim that the grand jury testimony might have contained material evidence or might have aided * * * cross-examination does not establish a

particularized need." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 44. Such a claim does not show that it is probable that the failure to disclose the testimony will deprive the petitioner of a fair adjudication.

{¶ 11} Because the trial court did not abuse its discretion in finding no particularized need, the first assignment of error is overruled.

### B. Summary Judgment

{¶ 12} The second assignment of error alleges that the trial court erred by granting the defendants' motion for summary judgment. Wiggins's argument focuses on Kumpf, contending that the trial court incorrectly concluded that he is immune from civil liability under the Political Subdivision Tort Liability Act, specifically, R.C. 2744.03.

{¶ 13} "Immunity from a civil suit presents a purely legal issue that may properly be determined by summary judgment." *Thorp v. Strigari*, 155 Ohio App.3d 245, 2003-Ohio-5954, 800 N.E.2d 392, ¶ 10 (1st Dist.), citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992). Summary judgment should be entered if the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" and "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C).

{¶ 14} R.C. 2744.03 provides that "[i]n a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function" certain "defenses or immunities may be asserted to

establish nonliability." R.C. 2744.03(A). Wiggins does not dispute that Kumpf was an employee of a political subdivision or that he was acting in connection with a governmental or proprietary function. Nor does Wiggins challenge the trial court's conclusion that the Animal Resource Center is immune.[2] Only Kumpf's immunity is challenged.

{¶ 15} "When a plaintiff sues an individual employee of a political subdivision, the analysis begins with R.C. 2744.03(A)(6)." *Thorp* at ¶ 31, citing *Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). R.C. 2744.03(A)(6) provides blanket immunity for acts or omissions that are within the scope of the employee's employment unless the acts or omissions were "with malicious purpose, in bad faith, or in a wanton or reckless manner," R.C. 2744.03(A)(6)(b).[3] Wiggins does not contend that Kumpf acted outside the scope of his employment; he contends only that Kumpf acted recklessly by initiating the investigation, starting with the search warrant. If Kumpf had done a reasonable and routine investigation first, Wiggins says, he would have discovered that Wiggins had not done anything wrong. The trial court concluded based on the evidence that it was reasonable for Kumpf to suspect possible animal cruelty and dogfighting activity and concluded that there was probable cause for the search warrant. We agree.

---

[2]The trial court concluded that the Center is immune under R.C. 2744.03(A)(2), which provides: "The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee." R.C. 2744.03(A)(2).

[3]An employee is not immune also if civil liability is expressly imposed elsewhere in the Revised Code. R.C. 2744.03(A)(6)(c).

{¶ 16} In his affidavit, Kumpf states that based on what he saw and learned and his knowledge, training, and experience, he suspected possible violations of R.C. 959.131(C)(2), which prohibits "[o]mit[ing] any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal." Kumpf saw through a garage window a dead dog just hanging there. He saw five live dogs but little water available for them to drink. He saw a female pitbull that appeared to have a distended uterus, an illness which Kumpf knew to be a serious medical condition. Seeing these things, it is reasonable to suspect animal cruelty. Kumpf also suspected violations of R.C. 959.16, which prohibits activities relating to dogfighting, including using, training, and keeping dogs for that purpose. Several of the dogs that he saw were pit bulls with cropped ears and several were chained to dog houses with heavy chains. He saw "spring poles" with cowhides hanging from them, which Kumpf knew are used for building up a dog's neck and jaw muscles. Kumpf later discovered that none of pitbulls was licensed. According to Kumpf's affidavit and deposition, this type of dog and the fact that their ears were cropped and the tools and materials are consistent with activities related to dogfighting. Nothing in the record here suggests otherwise.

{¶ 17} An affidavit supporting an application for a search warrant must set forth circumstances that provide a substantial basis for concluding that there is probable cause that evidence of a crime will be found. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraphs one and two of the syllabus. Probable cause "has been defined as ' "a reasonable ground for belief of guilt." ' "*State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000), quoting *Carroll v. United States*, 267 U.S. 132, 161, 45 S.Ct. 280, 69

L.Ed. 543 (1925). By law, it is the county dog warden's duty to enforce the statutes that require dogs to be licensed and that prohibit animal cruelty and dogfighting. R.C. 955.12; *see also* R.C. 955.23. We note too that the law requires a dog warden to seek an order from a court to enter property and seize a dog if the warden "has reason to believe that a dog is being treated inhumanely." R.C. 955.12. The court must issue such an order if it "finds probable cause to believe that the dog is being treated inhumanely." R.C. 955.12.

{¶ 18} Nothing in the record suggests that Kumpf, in obtaining or executing the search warrant or in presenting his findings to the prosecutor, acted recklessly. Given the circumstances alleged in the affidavit, reiterated in Kumpf's deposition, it was reasonable for him to suspect statutory violations. The circumstances provide a "substantial basis" for concluding that probable cause existed. *Compare Patton v. Wood Cty. Humane Soc.*, 154 Ohio App.3d 670, 2003-Ohio-5200, 798 N.E.2d 676 (6th Dist.) (humane-society employee entitled to statutory immunity where employee obtained and executed a search warrant after receiving a phone call that horses, sheep, and a pony were outside without shelter during cold weather; warrant was based on probable cause, and employee did not act with malicious purpose, bad faith, or in a wanton or reckless manner).

{¶ 19} Wiggins contends that the grand jury's decision not to indict him "necessarily mean[s] that there was a lack of probable cause in the institution of the prosecution." Because, he says, "an indictment is otherwise prima facie evidence of probable cause; conversely, the return of a no true bill or a nolle prosequi suggests a lack of probable cause." (Brief of Plaintiff-Appellant, 5). In support of these propositions, Wiggins cites *Deoma v. Shaker Heights*, 68 Ohio App.3d 72, 587 N.E.2d 425 (8th Dist.1990), and *Melanowski v. Judy*, 102 Ohio St. 153, 131 N.E. 360 (1921).

{¶ 20} A grand jury is to return an indictment against a person if it finds probable cause to think that the person committed a crime. *See Ohio Jury Instructions*, CR Section 301.07 (Rev. Nov. 1, 2003) ("Indictments should be returned against those who you find are probably guilty of the commission of a crime * * *."). *Deoma* supports the proposition that "[t]he return of an indictment by the grand jury is evidence of probable cause," *Deoma* at 77. As for *Melanowski*, it supports the proposition that "malice *may* be inferred from proof of lack of probable cause." (Emphasis added.) *Rogers v. Barbera*, 170 Ohio St. 241, 246, 164 N.E.2d 162 (1960) (citing *Melanowski* for this proposition). But we disagree with the appellant that the lack of an indictment means that probable cause did not exist for the initiation of the charges. We do not know whether all the necessary witnesses were called before grand the jury. We do not know how, or whether, further investigation subsequent to the initiation of charges may have affected the result and we do not know what statutes were presented for review by the grand jury. All we know is that less than seven of the nine grand jurors agreed to indict. Crim. R. 6 (A) & (F). Here, the evidence shows probable cause for Kumpf's actions and no evidence from which malice may be inferred. Likewise the record fails to raise a genuine issue of material fact that Kumpf acted recklessly. Accordingly Kumpf is entitled to the immunity provided by R.C. 2744.03(A)(6) and summary judgment in his favor was correct.

{¶ 21} The second assignment of error is overruled.

{¶ 22} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
R. Lynn Nothstine
Daniel E. Whiteley, Jr.
Hon. Dennis J. Adkins