[Cite as *Rondy v. Richland Newhope Industries, Inc.*, 2016-Ohio-118.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STEPHANIE M. RONDY, et al. | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
|      Plaintiffs-Appellants | |
| -vs- | Case No. 15 CA 45 |
| RICHLAND NEWHOPE INDUSTRIES,<br>INC., et al. | |
| | O P I N I O N |
|      Defendants-Appellees | |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No.  2013 CV 0634 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 13, 2016 |


APPEARANCES:

| | |
|---|---|
| For Plaintiffs-Appellants | For Defendants-Appellees |
| MARC V. HEDRICK<br>BETH ALLEN OWENS<br>24 West Third Street, Suite 200<br>Mansfield, Ohio  44902 | FRANK H. SCIALDONE<br>MAZANEC, RASKIN & RYDER<br>100 Franklin's Row, 34305 Solon Road<br>Cleveland, Ohio  44139 |
| | STACY V. POLLACK<br>MAZANEC, RASKIN & RYDER<br>175 South Third Street, Suite 1000<br>Columbus, Ohio  43215 |

*Wise, J.*

**{¶1}**    Appellants Stephanie M. Rondy, Teresa L. DeWitt and Robert R. Rondy appeal the decision of Richland County Court of Common Pleas granting summary judgment in favor of Appellees Richland Newhope Industries, Inc., Richland County Board of Developmental Disabilities, Katy Garcia, Court Sturts, Rita Maxey and Liz Prather.

## STATEMENT OF THE FACTS AND CASE

**{¶2}**    Stephanie Rondy is a severely retarded, wheelchair-confined resident of The Raintree. The Raintree is a residential facility operated by Richland County Board of Developmental Disabilities (RCBDD).

**{¶3}**    Stephanie cannot verbally communicate and requires constant supervision. She requires total assistance for all personal care and daily needs. Stephanie has been a resident of the government-run Raintree for nearly thirty years. Upon her admission to The Raintree, Stephanie's parents, Appellants Teresa L. DeWitt and Robert R. Rondy, signed a general release, releasing Appellees from "any claims."

**{¶4}**    On August 17, 2012, Appellee Garcia, a RCBDD Kitchen Manager, and Shirley Boyce, a RCBDD Secretary, were assisting in loading residents onto a bus from the freight loading dock of The Raintree. It is undisputed that The Raintree building and the loading dock were under control of Appellee, Richland County Board of Developmental Disabilities.

**{¶5}**    The freight loading dock was used as a place to load and unload residents, according to The Raintree Superintendent, Defendant/Appellee Liz Prather, because it provided "the least exposure to potential harsh weather conditions." By her own admission, Appellee Garcia left Stephanie alone on the loading dock because there was no one to take

her into the bus right away. (Garcia Depo. at 30). Garcia was not clear or did not know that she could have pushed Stephanie onto the bus (Garcia Depo. at 29-30; Campbell Depo. at 9; Sturts Depo. at 40). Further, Garcia said she thought it would be "nice" for Stephanie to get some "sun." However, by her own admission, when Garcia left Stephanie on the loading dock, she did not lock or completely lock the wheels on Stephanie's wheelchair. (Garcia Depo. at 30). Garcia then proceeded to go get another resident from the building. At that time, Stephanie started to roll off the loading dock. (Garcia Depo. at 31). Stephanie was still seat-belted in her wheelchair, and she landed face first, on the concrete below. As a result of the fall, Stephanie suffered multiple facial fractures, broken teeth, and twisted vertebrae. She had to have titanium facial implants and oral surgery. She also began to have seizures following her fall.

{¶6} On June 7, 2013, Plaintiffs-Appellants filed a Complaint against Defendants-Appellees in the Richland County Court of Common Pleas.

{¶7} On September 3, 2013, Defendants-Appellees filed their First Motion for Summary Judgment and to Stay Discovery, based upon "sovereign immunity."

{¶8} On September 19, 2013, Plaintiffs-Appellants filed an Amended Complaint.

{¶9} On September 30, 2013, Defendants-Appellees filed a Second Motion for Summary Judgment and to Stay Discovery.

{¶10} On October 25, 2013, Plaintiffs-Appellants filed a Motion to Continue and to Compel Discovery.

{¶11} By Order dated February 3, 2014, the Motion to Stay Discovery was overruled, allowing Plaintiffs to conduct discovery, which was followed by Plaintiffs filing a Motion for an Oral Hearing and Responsive Motion Contra to Summary Judgment on June 4, 2014,

{¶12} On July 25, 2014, Plaintiffs-Appellants amended their complaint a second time to add the Defendant auto insurers, who were summarily dismissed and who Plaintiffs-Appellants are not appealing against.

{¶13} On August 7, 2014, a Third Motion for Summary Judgment was filed by Defendants-Appellees.

{¶14} On August 8, 2014, Plaintiffs-Appellants filed a Second Motion for an Oral Hearing and Responsive Motion Contra to Summary Judgment.

{¶15} Additionally, on August 14, 2014, Defendants-Appellees filed a Supplemental Brief to the Motion for Summary Judgment on Statutory Immunity, a Motion to Disqualify Plaintiff's Expert, and a Motion to Strike Plaintiff's References to Subsequent Remedial Measures.

{¶16} On September 12, 2014, Plaintiffs-Appellants responded in opposition to each Defendants-Appellees August 14, 2014, motions.

{¶17} By Judgment Entry filed May 5, 2015, the trial court filed its Judgment Entry resolving all pending motions. In said Entry, the trial court dismissed all of Plaintiffs-Appellants' claims against Defendants-Appellees and granted their Motion to Strike Plaintiff's References to Subsequent Remedial Measures. The trial court also ruled that any evidence that Defendants-Appellees replaced the safety barricade after the fall was inadmissible as a Subsequent Remedial Measure and was not evidence tending to show the "feasibility of precautionary measures" that could have been taken to make safe the defective and dangerous loading dock. Finally, the trial court ruled that a waiver of liability against "all claims" that Plaintiffs-Appellants, Teresa L. DeWitt and Robert R. Randy, signed in favor of Defendants-Appellees was valid.

{¶18} Appellants now appeal, raising the following errors for review:

**ASSIGNMENT OF ERROR**

{¶19} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, IN FAVOR OF APPELLEES, BASED UPON ITS OPINION THAT THE COURT NEED NOT PRESENT TO A JURY CUMULATIVE EVIDENCE OF RECKLESS AND MALICIOUS ACTIONS BY A POLITICAL SUBDIVISION AND ITS EMPLOYEE, WHEN THE EMPLOYEE NEGLIGENTLY FAILED TO LOCK APPELLANT STEPHANIE RONDY'S WHEELS ON HER WHEELCHAIR, AFTER LEAVING HER ON APPELLEES' DEFECTIVE FREIGHT LOADING DOCK, ALLOWING STEPHANIE TO ROLL OFF AND SUSTAIN SERIOUS INJURIES BY LANDING ON HER FACE, DUE TO THE FACTS THAT THE EMPLOYEE WAS NOT PROPERLY TRAINED IN WHEELCHAIR PROCEDURES, WAS ONLY HELPING LOAD WHEELCHARIED [SIC] RESIDENTS ONTO BUSES DUE TO STAFFING SHORTAGES, AND LOADING AT PLACE NOT DESIGNED FOR LOADING WHEELCHAIRED PEOPLE ONTO BUSES (WHEN SUCH A PROPER PLACE EXISTED), IN ADDITION TO THE FACT THAT THE POLITICAL SUBDIVISION REMOVED A SAFETY BARRIER THAT COULD HAVE PREVENTED STEPHANIE RONDY FROM ROLLING OFF THE LOADING DOCK, WHEN THE APPELLEES' ACTIONS WERE DONE OUT OF ILL WILL AND ULTERIOR MOTIVE; AT THE SAKE OF STEPHANIE RONDY'S SAFETY AND FOR APPELLEES' CONVENIENCE.

{¶20} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, IN FAVOR OF APPELLEES, BASED UPON ITS OPINION THAT A SIGNED WAIVER OF LIABILITY RELEASED THE APPELLEES, BASED ON ITS DECISION THAT A

GENERAL RELEASE OF "ANY CLAIMS," THAT IN NO WAY CONTEMPLATED NOR COULD LEGALLY WAIVE THE MALICIOUS AND RECKLESS ACTIONS OF THE APPELLEES, WAS VALID, IN SPITE OF THE FACT THAT APPELLANTS, TERESA L. DEWITT, AND ROBERT R. RONDY, PARENTS OF APPELLANT STEPHANIE RONDY, SIGNED THE RELEASE FROM AN UNEQUAL BARGAINING POSITION WITH THE GOVERNMENT, IN ORDER TO GET THEIR DAUGHTER THE HELP SHE REQUIRED.

{¶21} "III. THE TRIAL COURT ERRED IN GRANTING, IN FAVOR OF APPELLEES' MOTION TO STRIKE PLAINTIFFS' REFERENCES TO SUBSEQUENT REMEDIAL MEASURES, PURSUANT TO OHIO EVID. R. 407, WHEN THE COURT RULED EVIDENCE OF APPELLEES' REPLACEMENT OF A SAFETY BARRIER, THEY HAD PREVIOUSLY REMOVED WAS NOT EVIDENCE SHOWING THE "FEASIBILITY OF PRECAUTIONARY MEASURES," AN EXCEPTION TO OHIO EVID. R. 407, WHICH COULD HAVE PREVENTED STEPHANIE RONDY FROM ROLLING OFF A DOWNWARDLY SLOPED FREIGHT LOADING DOCK."

### *Summary Judgment Standard of Review*

{¶22} In their first two Assignments of Error Appellants argue the trial court erred in granting summary judgment in favor of Appellees. We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.* * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

**{¶23}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**I.**

**{¶24}** In their First Assignment of Error, Appellants argue that the trial court erred in finding that Appellees were immune from liability pursuant to R.C. Chapter 2722. We disagree.

**{¶25}** *Immunity*

**{¶26}** R.C. §2744.02(A)(1) provides:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

**{¶27}** Immunity is a doctrine that provides a complete defense to a tort action. By asserting an immunity defense, the defendant does not allege that there was no negligence. The defendant is asserting that it is protected from liability for negligence by reason of R.C. Chapter 2744. *See Miles ex rel. Miles v. Rich,* 347 S.W.3d 477, 485, 2011 WL 1564030 (Mo.App.2011).

**{¶28}** We utilize a three-tiered analysis to determine whether a political subdivision is immune from tort liability. *Anderson v. Massillon,* 5th Dist. Stark No. 2013CA00144, 2014–Ohio–2516, ¶ 35 citing *Green Cty. Agricultural Soc. v. Liming,* 89 Ohio St.3d 551, 556–557, 733 N.E.2d 1141 (2000); *Smith v. McBride,* 130 Ohio St.3d 51, 2011–Ohio–4674, 955 N.E.2d 954, ¶ 13–15.

**{¶29}** The first tier is the general rule that political subdivisions are generally immune from liability for injury or death to persons in connection with the performance of a governmental or proprietary function. R.C. §2744.02(A)(1). *Green Cty. Agricultural Society,* at 556–557, 733 N.E.2d 1141; R.C. 2744.02(A)(1). Second, we consider whether

an exception to that general rule of immunity applies. R.C. §2744.02(B). Last, if an exception to immunity does apply, Appellee has the burden and ability to reinstate immunity by demonstrating another statutory defense applies. R.C. §2744.03. *Howard v. Miami Twp. Fire Division,* 119 Ohio St.3d 1, 2008–Ohio–2792, 891 N.E.2d 311.

<u>*First Tier*</u>

**{¶30}** Neither party disputes that Appellee RCBDD is a political subdivision as defined in R.C. §2744.01, et seq. It is further undisputed that the individually named Appellees were employees of RCBDD.

**{¶31}** R.C. §2744.01(C)(1) states that a "governmental function" is a function of a political subdivision that is specified in R.C. §2744.01(C)(2) or one that satisfies any of the following:

> (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

> (b) A function that is for the common good of all citizens of the state;

> (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

**{¶32}** A governmental function is also specified as one that involves the enforcement of any law or a function that the general assembly mandates a political subdivision to perform. R.C. §2744.01(C)(2)(i) and R.C. §2744.01(C)(2)(x).

**{¶33}** In the instant case, it is undisputed that RCBDD and the individual employees were engaged in a governmental function as defined by statute and therefore qualify for statutory immunity.

**{¶34}** Consequently, the general grant of immunity under R.C. §2744.02(A)(1) applies in the instant case and will preclude liability unless Appellants can show that an exception under R.C. §2744.02(B) applies.

*Second Tier*

**{¶35}** The second tier of the analysis is found under R.C. §2744.02(B). The statute enumerates five exceptions to the general grant of immunity stated in R.C. §2744.02(A).

**{¶36}** The exception at issue in the present case is contained in R.C. §2744.02(B)(4), which reads:

Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function, as follows:

\*\*\*

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a

governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

**{¶37}** Under the first prong of this analysis, the trial court found that employee Garcia was negligent. Under the second prong, it found that a "physical defect" existed due to the loading dock's downward slope and lack of absence of safety barriers.

*The Third Tier*

**{¶38}** Appellant challenges the trial court's findings under this tier.

**{¶39}** As stated above, if one of the five exceptions enumerated in R.C. §2744.02 applies and exposes a political subdivision to liability, the third step is to determine whether any of the additional defenses or immunities contained in R.C. §2744.03 apply. *Patton v. Wood Cty. Humane Soc.,* 154 Ohio App.3d 670, 2003–Ohio–5200, 798 N.E.2d 676, ¶ 35.

**{¶40}** R.C. §2744.03, provides in pertinent part:

(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

***

(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment

or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

{¶41} Here, the trial court found that Appellees were entitled to discretionary immunity because Appellants failed to demonstrate that Appellee(s) acted with "malicious purpose, in bad faith, or in a wanton or reckless manner." (Judgment Entry, May 5, 2015, at 13).

**{¶42}** " 'In the context of political subdivision immunity, malicious purpose has been defined as the willful and intentional design to do injury.' " *Friga v. E. Cleveland,* 8th Dist. Cuyahoga No. 88262, 2007–Ohio–1716, ¶ 15, quoting *Piro v. Franklin Twp.,* 102 Ohio App.3d 130, 139, 656 N.E.2d 1035 (9th Dist.1995), citing *Jackson v. Butler Cty. Bd. of Cty. Commrs.,* 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991). Bad faith " 'connotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *Jackson,* quoting *Slater v. Motorists Mut. Ins. Co.,* 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus.

**{¶43}** In *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012–Ohio–5711, the Ohio Supreme Court held "wanton", "willful", and "reckless" describe different and distinct degrees of care and are not interchangeable. *Id.* at paragraph one of syllabus. Although Appellants do not allege Appellees acted willfully, we have, nonetheless, included that definition herein.

**{¶44}** "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Id.* at ¶ 33. Wanton misconduct has been likened to conduct that manifests a "disposition to perversity," but the Supreme Court abandoned "disposition to perversity" as an element of the definition of wanton misconduct in *Hawkins v. Ivy,* 50 Ohio St.2d 114, 363 N.E.2d 367 (1977). *Id.* at ¶ 28. " [M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor' ". *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994) (Citation omitted). "[I]t must be under such surrounding

circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Anderson, supra* at ¶ 25 citing *Universal Concrete Pipe Co. v. Bassett,* 130 Ohio St. 567, 200 N.E. 843 (1936), paragraph two of syllabus.

**{¶45}** "Willful conduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson, supra* at ¶ 32. Willful misconduct involves "an intent, purpose, or design to injure." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 375 (Citation omitted). Willful misconduct is something more than negligence and it imports a more positive mental condition prompting an act than wanton misconduct. *Phillips v. Dayton Power & Light Co.,* (1994), 93 Ohio App.3d 111, 119, 637 N.E.2d 963 (Citation omitted). "Willful misconduct" involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result. *Mashburn v. Dutcher,* 5th Dist. No. 12 CAE 010003, 2012–Ohio–6283, ¶ 45.

**{¶46}** Both wanton and willful describes conduct that is greater than negligence and can be summarized as follows: willful conduct is the intent to harm someone and wanton misconduct is the failure to exercise any care whatsoever. *Anderson, supra* at ¶ 48.

**{¶47}** "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the

circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34 (Citations omitted).

**{¶48}** Appellants argue that The Raintree was understaffed, that the employees (Ms. Garcia) lacked formal training, and that Appellees should have used an alternative location for the loading of residents onto the buses.

**{¶49}** Upon review, we do not find that any of the issues raised under these arguments demonstrate that Appellees acted with malicious purpose, bad faith or in a wanton or reckless manner.

**{¶50}** Based on the foregoing, we find Appellants' First Assignment of Error not well-taken and hereby overrule same.

## II.

**{¶51}** In their Second Assignment of Error, Appellant argues that the trial court erred in finding that the release of liability signed by Appellants was enforceable

**{¶52}** Based on our finding that sovereign immunity applies in this case, we find this Assignment of Error moot.

## III.

**{¶53}** In their Third Assignment of Error, Appellant argues that the trial court erred in granting Appellees' Motion to Strike Plaintiffs' References to Subsequent Remedial Measures. We disagree.

**{¶54}** Ohio Evid.R. 407, Subsequent Remedial Measures, provides:

When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not

admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

{¶55} The purpose of Evid.R. 407 is to encourage remedial measures to prevent further injuries. *See Gollihue v. Consolidated Rail Corp.,* 120 Ohio App.3d 378, 408, 697 N.E.2d 1109 (3d Dist.1997). This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." *Hill v. W. Res. Catering, Ltd.*, 8th Dist. Cuyahoga No. 93930, 2010-Ohio-2896, ¶15.

{¶56} The exclusion of evidence of subsequent remedial measures is within the discretion of the trial court. *Holman v. Licking Cty.,* 107 Ohio App.3d 106,112, 667 N.E.2d 1239 (5th Dist.1995), citing *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 34.

{¶57} In examining Evid.R. 407, the Ohio Supreme Court in *McFarland v. Bruno Mach. Corp.,* 68 Ohio St.3d 305, 1994-Ohio-62, 626 N.E.2d 659, noted that:

The policy reasons for Evid.R. 407 have been stated as resting on two grounds. The first justification for the rule is that evidence of subsequent remedial measures is thought to have minimal or nonexistent probative value in *establishing negligence.* Taking subsequent remedial action is not an admission of negligence. The rationale is that the injury may have been caused by reason of mere accident or through the plaintiff's contributory negligence. The second explanation for excluding evidence under this rule

is based on the social policy of encouraging repairs or corrections. The argument behind this policy reason is that a defendant would be less likely to take subsequent remedial measures if the repairs or corrections could be used as evidence against the defendant at trial.

**{¶58}** However, "if [offered for] a purpose other than to show negligence or culpability then evidence of subsequent remedial measures, if relevant, should be admitted." *Worrell v. Norfolk & Western Railway Co.* (1994), 94 Ohio App.3d 133, 137, 640 N.E.2d 531 citing *McFarland,* 68 Ohio St.3d at 307-308.

**{¶59}** Here, Appellants attempt to show that replacement of the barricade on the loading dock was not "negligence per se; rather, Plaintiffs are showing that the loading dock was in fact defective and dangerous." Plaintiffs' Response to Defendants' Motion to Strike.

**{¶60}** Upon review, we agree with the trial court that Appellants are attempting to use the subsequent remedial measures to prove a breach of duty under a theory of negligence, which is disallowed under Evid.R. 407.

**{¶61}** We do not find that the trial court abused its discretion in striking references to such subsequent remedial measures.

**{¶62}** Based on the foregoing, we find Appellants' Third Assignment of Error not well-taken and hereby overrule same

**{¶63}** For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

JWW/d 1230